UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

PHILLIP M. CAMPBELL,

                              Petitioner,

              v.                                              9:20-CV-1375
                                                             (GLS/CFH)

RICKEY BARTLETT,

                              Respondent.

───────────────────────────────────

APPEARANCES:                                 OF COUNSEL:

PHILLIP M. CAMPBELL
Petitioner pro se
Ithaca, NY

HON. LETITIA JAMES                           HANNAH S. LONG
Attorney for Respondent                      Assistant Attorney General
New York State Attorney General
28 Liberty Street
New York, NY 10005

GARY L. SHARPE
Senior United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

Petitioner Phillip Campbell seeks federal habeas corpus relief pursuant to 28 U.S.C.

§ 2254.  Dkt. No. 1, Petition ("Pet.").  Respondent requested, and was granted, permission to

file a motion to dismiss in lieu of an answer.  Dkt. No. 12, Motion; Dkt. No. 13, Text Order.

The copy of the Text Order sent to petitioner was returned to the Court as undeliverable.

Dkt. No. 14.

Respondent timely filed the motion to dismiss.  Dkt. No. 15.[1]  Petitioner did not respond.  For the reasons that follow, the petition is dismissed as moot.

## II.    BACKGROUND

On January 3, 2019, the Tompkins County Court sentenced petitioner for driving while intoxicated after a prior conviction for a similar offense.  E.[2] 1-9.  Petitioner was sentenced to an indeterminate term of one to three years' imprisonment and a one-year requirement to use an ignition interlock device on his vehicle.  E. 7-9, 10.

Petitioner was released to parole on March 11, 2020.  E. 12-19, 31.  In July 2020, petitioner violated the terms of his release and, in a decision dated September 10, 2020, the Parole Board revoked parole and ordered petitioner to complete the custodial Willard Drug Treatment Program.  E. 23-27.  On September 29, 2020, Department of Corrections and Community Supervision (DOCCS) received petitioner at the Elmira Correctional Facility Reception Center for purposes of transfer to Willard.  E. 27, 31.  However, due to COVID-19, petitioner was not immediately transferred because DOCCS had suspended movement out of Elmira shortly after his arrival there.  Dkt. No. 15-2 at 5 n.2.  The transfer prohibition was lifted on December 1, 2020, and petitioner was transferred to Willard on that day.  *Id.*, E. 12, 31; Dkt. No. 3.

Petitioner was released from Willard back on supervision on December 30, 2020.  E. 29, 31.  Petitioner's sentence and parole supervision ended on April 21, 2021.  E. 33; *see*

---

[1]  With the exception of the Exhibits, Dkt. No. 15-1, which are Bates stamped and consecutively-paginated on the lower center of each document, citations to the parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

[2]  "E." refers to the Bates stamped numbering contained within the exhibits to respondent's motion to dismiss.  Dkt. No. 15-1.

DOCCS Inmate Lookup, http://nysdoccslookup.doccs.ny.gov (last visited June 10, 2021);

*Perez v. Lilly*, No. 17-CV-4222, 2018 WL 3768528, at *1 (S.D.N.Y. Aug. 8, 2018) (explaining

that the court can take judicial notice of information found on the official DOCCS inmate

lookup service website).  Further, as there is no sign that petitioner was declared delinquent

on his ignition interlock device requirement, petitioner's interlock obligation expired on March

11, 2021, one year after his initial release from prison.  E. 31; *see* N.Y. Penal Law § 60.21

(explaining that the ignition interlock period "shall run consecutively to any period of

imprisonment and shall commence immediately upon such person's release from

imprisonment"); *Id.* § 65.15(2) (explaining that, when a person has violated conditions of

discharge and been declared delinquent, the interlock device imposition "shall remain in

effect throughout the delinquency and the court may extend the period of such installation

and maintenance by the period of delinquency; provided, however, that the [individual] shall

get credit for any period where the device was installed and maintained during the

delinquency.").  Accordingly, petitioner is no longer subject to any form of custody or

supervision as the result of his 2019 sentence.

## III.    THE PETITION

Petitioner challenges his ninety-day sentence to Willard, entered on September 10,

2020, upon a guilty plea, as the result of a parole revocation hearing.  Pet. at 1-2.

Petitioner first argues that he is entitled to habeas relief because he is "being held in a

different prison than the one on the court's commitment order."  Pet. at 5.  Specifically,

petitioner was sentenced to ninety-days of drug treatment at Willard on September 10, 2020;

however, he was not transferred to Willard until December.  *Id.*  Second, petitioner alleges

that he is "being denied the rehabilitation, care, and treatment required by [his] sentence" because he was incarcerated at Elmira, instead of Willard per the order.  *Id.* at 6-7.  Lastly, petitioner contends that he is "[n]ot being transferred to the sentenced facility in a timely manner."  *Id.* at 8.  At the time the petition was filed, petitioner had been incarcerated for fifty-three days waiting for his ninety-day sentence to begin.  *Id.*  Petitioner seeks "[i]mmediate release."  *Id.* at 15.

Respondent moves to dismiss the petition.  Dkt. No. 15.  Specifically, respondent argues that petitioner's claims are moot because he both received the relief he sought and his sentence has expired.  Dkt. No. 15-2 at 6-8.

## IV.   DISCUSSION

"Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to those cases which present a 'case or controversy.'"  *Islam v. N.Y. State Bd. of Parole*, No. 9:13-CV-0854 (GTS/TWD), 2016 WL 3943668, at *2 (N.D.N.Y. June 2, 2016) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).  Accordingly, "in order for there to be a valid exercise of subject matter jurisdiction, a federal court must have before it an actual controversy at all stages of review, not simply at the time it is filed."  *In re Flanagan*, 503 F.3d 171, 178 (2d Cir. 2007).  Therefore, "[a] case becomes moot if, at any stage of the proceedings, it fails to satisfy the case-or-controversy requirement of Article III[.]"  *Kamagate v. Ashcroft*, 385 F.3d 144, 150 (2d Cir. 2004).  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).

A habeas petition represents the sole legal remedy for a state prisoner seeking to challenge the fact or duration of his imprisonment and requesting immediate or expedited

release therefrom.  *Preiser v. Rodriguez*, 411 U.S. 475, 484, 500 (1973).

> Habeas petitioners no longer in custody must demonstrate a concrete and continuing injury that is a collateral consequence of detention.  *So v. Reno*, 251 F. Supp. 2d 1112, 1120 (E.D.N.Y.2003) (internal quotation marks omitted) (citing Spencer, 523 U.S. at 7).  There is a presumption of collateral consequences for challenges to criminal convictions; however, no such presumption exists for challenges to other aspects of criminal proceedings.  *See Cobos v. Unger*, 534 F. Supp. 2d 400, 403 (W.D.N.Y.2008) (holding that petitioner's challenge to denial of parole was rendered moot by his subsequent release to parole).

*Guitierrez v. Laird*, No. 1:05-CV-05135, 2008 WL 3413897, at *1 (E.D.N.Y. Aug. 8, 2008) (dismissing habeas petition as moot where petitioner sought credit for time served but was no longer in federal custody because he had been re-released to parole); *see Davies v. Goffman*, No. 1:09-CV-7224, 2009 WL 5196134, at *2 (S.D.N.Y. Dec. 21, 2009) (explaining that a habeas petition "does not become moot automatically upon the release of a petitioner from custody; so long as the petitioner continues to demonstrate a live case or controversy, or, in other words, that a concrete and continuing injury that is a collateral consequence of the detention can be remedied by granting the writ exists") (internal quotation marks and citations omitted); *Robinson v. Connell*, No. 9:03-CV-1151 (LEK/VEB), 2008 WL 907318, at *2 (N.D.N.Y. Mar. 31, 2008) (same).

Here, petitioner does not challenge his underlying criminal conviction; instead, he challenges his continued improper incarceration at a correctional facility due to DOCCS delay in transferring him to Willard.  Because this is not a challenge to petitioner's underlying criminal conviction, the presumption of collateral consequences does not apply.  *See Guitterrez*, 2008 WL 3413897, at *1.  Instead, petitioner must prove "a concrete and continuing injury that is a collateral consequence of the detention [which] can be remedied by

granting the writ[.]" *Davies*, 2009 WL 5196134, at *2; *accord So*, 251 F. Supp. 2d at 1120 (E.D.N.Y. 2003) (explaining the "more demanding standard" the Supreme Court announced for petitioners not challenging their underlying criminal conviction, requiring petitioners to "demonstrate a concrete injury in fact").

Petitioner claims that his inappropriate incarceration was in violation of court orders and the greater aims to rehabilitate him. However, petitioner's injury ceased on December 1, 2020, the day he was transferred to Willard. Therefore, the case or controversy requirement is no longer satisfied, and the case is moot. *See Robinson*, 2008 WL 907318, at *2 (dismissing petition as moot after petitioner's release to parole because petitioner "failed to demonstrate a continuing concrete injury as the result of the alleged miscalculation of his release dates that might have been remediable by the writ").

In addition, granting the petition would not provide petitioner with any remedy that he has not already received. Petitioner requested immediate transfer to Willard to receive the treatment he was promised or immediate release. Both types of relief have already been accorded to him. The COVID-19 pandemic prevented petitioner's movement for a time; however, as soon as DOCCS was able, petitioner was transferred to, and successfully completed, the Willard Drug Treatment. *See Reid v. Superintendent, Altona Corr. Facility*, No. 9:09-CV-0820 (GTS), 2010 WL 4962990, at *2 (N.D.N.Y. Dec. 1, 2010) (dismissing habeas petition challenging DOCCS failure to place petitioner into a court-ordered substance abuse program after a parole violation where "[w]hen the Division of Parole learned that Petitioner was not transferred to [the] . . . treatment program . . . the ALJ amended its decision and directed that Petitioner be sentenced to time served on the parole revocation and restored to parole").

Moreover, petitioner's maximum expiration date has passed.  Therefore, he is no longer in custody or under supervision as a result of the 2019 sentence and any claims he had related to that sentence have been rendered moot.  *See Islam*, 2016 WL 3943668, at \*2 ("Where a habeas petitioner attacks only his sentence and not the conviction, his sentence has been fully served, and there are no collateral consequences that could be eliminated . . . the case is moot."); *see also United States v. Lawrence*, 741 F. App'x 844, 846 (2d Cir. 2018) (explaining that where an inmate was released from custody and "no longer ha[d] a sentence or designation to challenge," his claims were moot).

There is no readily apparent applicable exception to the mootness doctrine; particularly lacking is the "capable of repetition yet evading review" exception.  *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018).  Such exception applies "only if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again."  *Id.* (internal quotation marks and citations omitted).

In order for the second prong of this exception to be met, it would require that petitioner re-offend and be subjected to the same sentence.  In similar circumstances, the prospect of re-incarceration has been insufficient to establish a continuing concrete injury.  *See Spencer*, 523 U.S. at 15 (rejecting arguments that the impact of parole violations on subsequent parole proceedings is a sufficient collateral consequence because said argument hinges on individuals "violating the law, getting caught, and being convicted," and such individuals "are able – and indeed [are] required by law – to prevent such a possibility from occurring") (citing *Lane v. Williams*, 455 U.S. 624, 632 n.13 (1982)); *see also O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("[W]e are nonetheless unable to conclude that the case-

or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws.  We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction[.]").  Because the Supreme Court presumes individuals will act in a lawful way, there is no reasonable expectation that petitioner will find himself in a similar situation again because it would first require him to act in an unlawful manner.  Therefore, petitioner is unable to establish both prongs of the mootness exception.

Because the Court has determined that petitioner's release to parole rendered his present petition moot, respondent's motion is granted and the petition is dismissed.

## V.    CONCLUSION

**WHEREFORE**, it is

**ORDERED** that respondent's motion to dismiss (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that the petition (Dkt. No. 1) is **DISMISSED** as moot; and it is further

**ORDERED** that the Court declines to issue a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c)[3]; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules of Practice.

**IT IS SO ORDERED**.

---

[3] *See Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); 2d Cir. R. 22.1.

June 10, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge